**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| STIFEL, NICOLAUS & COMPANY, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SAPIENT CAPITAL, LLC, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 4:23-cv-00241-MTS |

**MEMORANDUM AND ORDER**

Before the Court are multiple motions filed by Defendants Sapient Capital, LLC and Sapient Capital Founders, LLC, including their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue pursuant to Federal Rule of Civil Procedure 12(b)(2) & (3).  Doc. [17].  Because the Court concludes Plaintiff Stifel, Nicolaus & Company, Inc. has failed to establish this Court's personal jurisdiction over Defendants, the Court will grant Defendants' Motion and dismiss this action without prejudice.

**I.      Background**

Plaintiff Stifel, Nicolaus & Company, Inc., ("Stifel") is a global wealth management and investment advisory firm headquartered in St. Louis with branch offices located throughout the United States including, as relevant to this action, in Indianapolis. In 2005, Jeffrey Cohen and David Knall, who were employees of McDonald Investments, Inc., formed Stifel's Indianapolis NW office and served as Managing Directors of the office.  They brought their team from McDonald Investments to Stifel—including David

Knall's son, James (Jamie) M. Knall, who eventually also became a Managing Director. In 2016, Thomas Pence joined the Indianapolis NW office as another Managing Director.

For nearly two decades, until February 2023, Stifel invested in building its Indianapolis NW office, which, by then, had more than thirty employees, approximately 7,500 client accounts, and approximately $10 billion under management. All the while, Stifel's headquarters in St. Louis provided a full suite of back-office support that enabled the Indianapolis NW office to serve clients, conduct trades, offer banking services and investment opportunities, fulfill compliance duties, and grow the Indianapolis NW office's client base.

In October 2022, the Managing Directors of the Indianapolis NW office—Cohen, Pence, and Jamie Knall—organized Defendant Sapient Capital, LLC ("Sapient") but continued to work at Stifel until February 2023. On the evening of February 16, 2023, the Managing Directors of the Indianapolis NW office extended employment offers on behalf of Sapient to Stifel employees who worked in the Indianapolis NW office. The next morning, Cohen, Pence, and Jamie Knall sent their resignation letters to a Stifel employee via email. Eleven minutes later, Andrew LeBlanc, who worked as the Indianapolis NW office's Chief Operating Officer, sent his resignation letter along with resignation letters for twenty-seven other employees in the office. Around this same time, Sapient launched its website that touted it had $10 billion in assets under management, fifty-plus years of experience, and forty clients with more than $50 million in assets. On February 22, 2023, Sapient's social media accounts represented that Stifel's Indianapolis NW office "is now Sapient Capital."

Stifel maintains that Defendants misappropriated the equity and goodwill that Stifel built in the Indianapolis NW office and misrepresented their assets, experience, and client base to the public and current clients. Stifel filed its Complaint in this Court seeking damages on eight causes of action, including false advertising under the Lanham Act, common law injurious falsehood, tortious interference with LeBlanc's employment contract, tortious interference with business relationships, unjust enrichment, breach of fiduciary duty aided and abetted by Defendants, fraudulent misrepresentation/ concealment, and common law unfair competition. Defendants maintain that courts in Missouri do not have personal jurisdiction over them.

## II.     Discussion

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* "The evidentiary showing required at the prima facie stage is minimal." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)). "The plaintiff's showing 'must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.'" *Id.* (quoting *Dever*, 380 F.3d at 1072).

"Where the applicable federal statute, here the Lanham Act, does not authorize nationwide personal jurisdiction, *see Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), the existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951; *accord St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 591 (8th Cir. 2001) ("Two prerequisites must be met to establish personal jurisdiction over a nonresident defendant. The forum state's long arm statute must be satisfied and the due process clause must not be violated.").

Missouri's long-arm statute "extends jurisdiction to the limits of the Due Process Clause" but "does so only for acts within its enumerated categories." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *accord State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984) (holding that Missouri's long-arm statute "provide[s] for jurisdiction, within the specific categories enumerated in the statutes, to the full extent permitted by the due process clause of the Fourteenth Amendment"). Missouri's long-arm statute and due process inquiries "are separate." *See Dairy Farmers*, 702 F.3d at 475; *accord Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011) (noting the Supreme Court of Missouri "analyze[s] the two questions separately"); *State ex rel. DKM Enters., LLC v. Lett*, 675 S.W.3d 687, 695 (Mo. Ct. App. 2023) (describing the "two-prong test"); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 688 (Mo. Ct. App. 2020) (describing the "two-step analysis"). Thus, a court may determine that Missouri's long-arm statute allows for personal jurisdiction over a claim but that the Due Process

Clause does not. *See, e.g.*, *Bros. & Sisters in Christ*, 42 F.4th at 951 (finding plaintiff sufficiently alleged that defendant engaged in acts covered by Missouri's long-arm statute but finding plaintiff failed to allege that defendant could reasonably anticipate being haled into court in Missouri).

      a. *Long-Arm Statute*

In relevant part, Missouri's long-arm statute authorizes jurisdiction over:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

    (1) The transaction of any business within this state;
    (2) The making of any contract within this state; [and]
    (3) The commission of a tortious act within this state;

. . .

3. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. § 506.500. These three categories of acts are the only three on which Plaintiff relies for personal jurisdiction over Defendants.[1] *See* Doc. [1] ¶ 17. Missouri's long-arm statute "specifies – twice – that personal jurisdiction only exists 'as to any cause of action arising from the doing of any of such [enumerated] acts.'" *State ex rel. DKM Enters.*, 675 S.W.3d at 695 (citing Mo. Rev. Stat. § 506.500); *see also* Mo. Rev. Stat. § 506.500.3 (reiterating that "[o]nly causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is

---

[1] While Plaintiff's Complaint includes the second category, making of any contract within Missouri, Plaintiff does not appear to rely on the category in its briefing. *See* Doc. [29] 13–20.

based upon this section"). To satisfy Missouri's long-arm statute, then, Plaintiff must establish that *each* of its claims against Defendants *arises from* the doing of one of those three categories of acts enumerated in the long-arm statute.

Plaintiff's Complaint identifies six instances from which all eight of its claims arise, being: "(i) a non-solicitation agreement with Stifel in Missouri; (ii) a client list that Sapient took from Stifel that includes clients with Missouri addresses and clients invested in limited liability companies created under Missouri law and/or operated by Stifel (as managing member and general partner) in Missouri; (iii) misrepresentations regarding a lease signed by Stifel in Missouri where Stifel, from Missouri, built out the office space at issue;" (iv) "many loans and other business activities demonstrating that Defendants transacted business in Missouri;" (v) "statements by Defendants on their website and social media, including Twitter, Facebook, Instagram, and LinkedIn, disseminated in Missouri and which harm Stifel at its Missouri headquarters;" and (vi) "Defendants' use of a Stifel client list for purposes of inducing these clients to leave Stifel," which "include[d] clients based in Missouri or who hold interests in investment vehicles created under Missouri law or where the general partner or managing member is based in Missouri." Doc. [1] ¶¶ 17–19.

When it comes to torts, the text of Missouri's long-arm statute seems to limit jurisdiction to causes of action that arise from tortious acts committed *within* Missouri. *See* Mo. Rev. Stat. § 506.500.1(3). But for at least the last fifty years, the U.S. Court of Appeals for the Eighth Circuit has recognized that "Missouri caselaw" construes the phrase "commission of a tortious act within this state" to "include extraterritorial acts

- 6 -

producing actionable consequences in Missouri." *Fulton v. Chicago, Rock Island & P. R. Co.*, 481 F.2d 326, 331 (8th Cir. 1973); *accord Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). The Eighth Circuit has opined that "foreseeability is the standard to be applied" when evaluating whether jurisdiction is appropriate under Missouri's long-arm statute "over a tortious act occurring in another state with actionable consequences in Missouri." *Myers*, 689 F.3d at 911 (emphasis omitted). Because the Court finds it was foreseeable that Defendants' allegedly tortious acts in Indiana would have actionable consequences in Missouri, jurisdiction is authorized under Missouri's long-arm statute over Defendants for Plaintiff's tort claims in this action. *Id.*; *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010) ("'[E]xtraterritorial acts that produce consequences in the state,' such as fraud, are subsumed under the tortious act section of the long-arm statute." (quoting *Longshore v. Norville*, 93 S.W.3d 746, 752 (Mo. Ct. App. 2002))); *but see Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1141–42 (E.D. Mo. 2016) (concluding that "with respect to intentional torts" the "more stringent/deliberate design standard applies," which requires that the defendant "intentionally directed" "consequences" at Missouri or, put another way, that the defendant "set in motion some course of action which was deliberately designed to move into Missouri and injure the plaintiff").

As for Plaintiff's other claims—Plaintiff's nontort claims—the Court cannot reach the same conclusion. Plaintiff argues that "Sapient has transacted business in Missouri." Doc. [29] at 17; *accord id.* at 18 ("The Complaint is replete with factual allegations

demonstrating that Sapient transacts business in Missouri."). But it is not enough that an entity conducts business in Missouri to satisfy the long-arm statute. Plaintiff must establish that its claims *arise from* Defendants' "transaction of business in Missouri for purposes of § 506.500.1(1)." *State ex rel. DKM Enters.*, 675 S.W.3d at 696. Plaintiff has necessarily failed to do so because Plaintiff has not shown that Defendants have conducted *any* business in Missouri. The best Plaintiff can muster in its opposition briefing is that its now-former employees of the Indianapolis NW office, upon tendering their resignations, told Plaintiff that they took a list of Plaintiff's client accounts, which included clients located in Missouri or invested in vehicles with Missouri addresses, and that they *intended* to solicit those accounts. Because Plaintiff has not shown that Defendants conducted any business in Missouri, Plaintiff "cannot establish that [its] claims 'aris[e] from' [Defendants'] transaction of business in Missouri for purposes of § 506.500.1(1)." *See id.*

In sum, Plaintiff has shown Missouri's long-arm statute authorizes personal jurisdiction over Defendants on Plaintiff's tort claims but has failed to show that the long-arm statute authorizes its nontort claims. Thus, this Court cannot exercise personal jurisdiction over Plaintiff's nontort claims against Defendants, but Plaintiff's tort claims survive to Due Process Clause review.

      b. *Due Process*

"Even if personal jurisdiction over [Defendants] is authorized by [Missouri's] long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646

F.3d 589, 594 (8th Cir. 2011). The Court "thus turn[s] to whether exercising jurisdiction over [Defendants] comports with the Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951. "Critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021)).

Plaintiff maintains that Defendants are subject to specific jurisdiction in Missouri—not general jurisdiction. Doc. [29] at 20. This Court would have specific jurisdiction over the out-of-state Defendants only if they "purposely directed [their] 'activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thus, the Court asks whether Defendants have "certain minimum contacts with" Missouri[2] and whether Plaintiff's claims "'arise out of or relate to [those] contacts.'" *Kaliannan*, 2 F.4th at 733 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).

A personal jurisdiction determination "is claim specific" because the conclusion that the court has personal jurisdiction over a defendant as to a particular claim "does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff's] other claims." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Thus, "[p]ersonal jurisdiction must be determined on a claim-by-claim basis." *Vallone v. CJS*

---

[2] The Court's inquiry must consider Defendants' "contacts with [Missouri] itself, not [Defendants'] contacts with persons who reside there." *Bros. & Sisters in Christ*, 42 F.4th at 952 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

*Sols. Grp., LLC*, 9 F.4th 861, 865 (8th Cir. 2021); *accord Sun World Lines, Ltd. v. Mar. Shipping Corp.*, 585 F. Supp. 580, 584 (E.D. Mo. 1984) ("[P]ersonal jurisdiction must be valid as to each and every cause of action in a complaint.").

In deciding whether specific jurisdiction exists over a defendant on a particular claim, the Eighth Circuit considers the totality of the circumstances and has long used five distilled factors to guide the analysis: "(1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Kendall Hunt*, 74 F.4th at 930 (quoting *Bros. & Sisters in Christ*, 42 F.4th at 952); *see also Aftanase v. Econ. Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965) (Blackmun, J., for the Court). The first three factors carry "the greatest weight." *Kendall Hunt*, 74 F.4th at 930.

Defendants' contacts with Missouri are virtually nonexistent. Defendants do not have loans in Missouri, business activities in Missouri, funds in Missouri, personnel residing in Missouri, offices in Missouri, or receive office support in Missouri. Defendants have not made any contracts within Missouri and have no clients residing in Missouri. All of Defendants' "alleged wrongful conduct . . . took place in" Indiana. *See id.* at 931 (finding the defendants' contacts with forum were not such that it would reasonably have anticipated being haled into court there in action for copyright infringement, tortious interference with contract, and unfair competition). Perhaps for this reason, Plaintiff struggles to identify Defendants' contacts with Missouri that establish specific personal jurisdiction over them. Tellingly, in the section on the "nature,

- 10 -

quality, and quantity of Sapient's forum contacts" in Plaintiff's opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff repeatedly discusses *its own* ties to the forum: Stifel "employed," "Stifel provided," Stifel "manage[d]," "Stifel offer[ed]," "Stifel paid," Stifel "funded," "Stifel provided," Stifel "generated." Doc. [29] at 24–25. But the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

The few Missouri-adjacent contacts of Defendants that Plaintiff identify fall short. *See* Doc. [1] ¶¶ 17–19. Plaintiff alleges that an agent of Sapient may have misappropriated a client list from Plaintiff—ostensibly from the Indianapolis NW office—and that the list includes two Missouri clients.[3] But the Court's inquiry must consider Defendants' "contacts with [Missouri] itself, not [Defendants'] contacts with persons who reside there." *Bros. & Sisters in Christ*, 42 F.4th at 952 (quoting *Walden*, 571 U.S. at 285). Having a list of 700 clients, of which two have Missouri ties, does not equate to Defendants purposefully availing themselves of the privilege of conducting activities within Missouri. Plaintiff's allegations that Defendants made statements that were "disseminated in Missouri" on their website and social media accounts likewise get Plaintiff nowhere. *See Bros. & Sisters in Christ*, 42 F.4th at 954 (noting defendant's

---

[3] Of the two clients, one is a Florida citizen whose fund happens to be administered by a Missouri bank. *See* Doc. [18] at 22; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining the purposeful availment requirement ensures a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts).

website was "nationally accessible," and plaintiff did not allege that defendant "specifically targeted Missouri consumers or the Missouri market").

Plaintiff's argument essentially is that, while it employed the Managing Directors of the Indianapolis NW office, Stifel's St. Louis headquarters was the fount through which everything flowed. *See* Doc. [29] at 26 ("[T]he foundation of these claims is that the operation of Stifel's Indianapolis NW office was intimately connected to the St. Louis headquarters."). But even *if* the Court imputed Jamie Knall, Cohen, Pence, and/or LeBlanc's actions to Defendants, Plaintiff does not convincingly explain how that connects Defendants to Missouri. *See Kendall Hunt*, 74 F.4th at 931 (noting that while plaintiff argued individuals' contacts should be imputed to corporation, it did not weigh in favor of finding personal jurisdiction, "even imputing th[ose] contacts" to the defendant). Even if Defendants "built [Plaintiff's] Indianapolis NW office business with extensive, necessary support from Stifel's St. Louis headquarters," it would not lead to a Missouri court having personal jurisdiction over Defendants. *See* Doc. [29] at 9. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *accord Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264 (2017) (explaining that "[i]n order for a court to exercise specific jurisdiction over a claim," there must be an "affiliation between the forum and the underlying controversy"— "unconnected activities" do not establish jurisdiction (internal quotation omitted)). If Plaintiff's position were correct, it would be difficult to imagine a suit Stifel could not bring in Missouri against a former employee or his or her new venture.

The first three factors—the nature and quality of Defendants' contacts with Missouri, the quantity of such contacts, and the relation of Plaintiff's claims to those contacts—weigh against finding personal jurisdiction. *See Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020) (finding first three contact-based factors weigh heavily against the exercise of personal jurisdiction in action for fraud and tortious interference with prospective economic advantage where defendants never visited forum, had any suit-related business there, or otherwise purposely availed themselves of the state's benefits and protections). The remaining two factors—Missouri's interest in providing a forum for its residents and the parties' convenience—do not tip the balance in Plaintiff's favor. *See Bros. & Sisters in Christ*, 42 F.4th at 953–54. Missouri has an interest in this litigation because the allegedly injured Plaintiff is a Missouri company. *Id.*; *see also K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 595 (8th Cir. 2011). The convenience of the parties is largely neutral but tips, if at all, in Defendants' favor. Plaintiff would likely be inconvenienced in an alternate forum, and Defendants would be inconvenienced by litigation in Missouri. Plaintiff, though, is a global company with offices located throughout the United States, including two offices in Indianapolis. *See* Doc. [29-1] ¶ 43.

Plaintiff also maintains that its intentional tort claims satisfy the *Calder* effects test. Doc. [29] at 26. In cases alleging intentional torts, courts consider an additional factor, the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). The effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts

are performed for the very purpose of having their consequences felt in the forum state."

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010). Under that test,

> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state].

*Kendall Hunt*, 74 F.4th at 931 (quoting *Bros. & Sisters in Christ*, 42 F.4th at 954 (alteration in original)). The Eighth Circuit uses the *Calder* test "merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Johnson*, 614 F.3d at 796–97). It "construe[s] the test narrowly, meaning that 'absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction.'" *Id.*

The *Calder* test does not alter the assessment of Defendants' contacts with Missouri. Plaintiff argues that the "brunt of the harm" resulting from Defendants' intentional torts "were felt by Stifel in St. Louis." Doc. [29] at 27. But "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* Plaintiff has not demonstrated how the tortious interference claims were uniquely or expressly aimed at Missouri. Nor has it done so with the allegedly false advertisement. Defendants' website and social media posts were nationally accessible. Plaintiff has not established that Defendants specifically targeted Missouri consumers or the Missouri market with them. *Bros. &*

*Sisters in Christ*, 42 F.4th at 954; *see also Johnson*, 614 F.3d at 798 (explaining that website was not "uniquely or expressly aimed at Missouri," and so "*Calder* provides no support for [plaintiffs'] Lanham Act claim"); *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007) ("Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state.").

For these reasons, the Court concludes that Plaintiff has failed to establish that Defendants could reasonably anticipate being haled into court in Missouri.

### III.     Conclusion

In sum, the Court concludes that Plaintiff has shown that Missouri's long-arm statute authorizes jurisdiction over Plaintiff's tort claims against Defendants in this action, but the Due Process Clause prohibits a Missouri court from exercising personal jurisdiction over Plaintiff's claims against Defendants.[4]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Sapient Capital, LLC and Sapient Capital Founders, LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Doc. [17], is **GRANTED**.

---

[4] Plaintiff requested that the Court allow jurisdictional discovery if the Court found that Plaintiff "ha[d] not yet shown a *prima facie* case that personal jurisdiction over Defendants is proper in this forum." Doc. [29] at 29.  Stating it "ha[d] provided ample grounds" showing jurisdictional discovery is warranted based on the "numerous factual allegations regarding the ties between" Defendants, their owners, and the Missouri forum, Plaintiff points to the "forum-related contacts" Knall, Pence, and Cohen had "by virtue of their positions with Stifel" and to the two clients with Missouri connections that were included on a client list. *Id.* at 29–30.  The Court already found these contacts insufficient.  Plaintiff has not explained what discovery it wishes to conduct or what it has any likelihood to discover that would establish personal jurisdiction over these Defendants on its claims against them.  For that reason, the Court denies Plaintiff's request.

- 16 -

An Order of Dismissal will be entered herewith dismissing this action without prejudice.

Dated this 8th day of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE